**OSMOND et al. v. RIVERDALE MANOR, Inc.**

No. 6467.

United States Court of Appeals Fourth Circuit.

Argued July 3, 1952.

Decided Sept. 29, 1952.

Nathan Siegel, Solicitor, Office of Rent Stabilization, Washington, D. .C. (Ed Dupree, General Counsel, and A. M. Edwards, Asst. Gen. ·Counsel, Office of Rent Stabilization, Washington, D. C., on ·brief), for appellants.

Frank E. Sellers, Norfolk, Va. (W. R. Ashburn; Ashburn, Agelasto & Sellers, Bertram S. Nusbaum and Nusbaum & Un-derwood, Norfolk, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

.DOBIE, Circuit Judge.

The appellants, defendants below, Ralph Osmund, Area Rent Director, Office of Rent Stabilization, Norfolk, Virginia, J. T. Forehand, William Todd, R. C. Scharff, A. B. Babb, and Mrs. Grace Wiggs, as mem-bers of the Local Rent Advisory Board for South Norfolk; appeal to us from an order entered on June 16, 1952, by the United States District Court for the Eastern District of Virginia (Judge Wilkin sitting), granting a preliminary injunction which enjoins the effectiveness of certain rent reduction orders issued by Ralph Osmund, Area Rent Director, pursuant to the Housing and Rent Act of 1947, as amended, 50 U.S.C.A. Appendix, § 1891 et seq., and denying appellants' motion to dismiss.

Appellee, plaintiff below, is a corporate owner of 1600 housing units located in the South Norfolk Defense-Rental Area and subject to the Housing and Rent Act of 1947, as amended. It brought this action for an injunction to restrain the defendants, Ralph Osmond, Area Rent Director, Norfolk, Virginia, and five named members of the Local Rent Advisory Board for South Norfolk, from making effective on June 1, 1952, or thereafter until further order of Court, certain orders issued by the Area Rent Director on May 9, 1952 and "from taking any further action in the premises during the pendency of plaintiff's appeal to the Director of Rent Stabilization and the subsequent course of such appeal."

Norfolk was free from federal rent controls during the period from June 25, 1949, to November 1, 1951. On November 1, 1951, Norfolk was placed back under federal rent control. On July 1, 1951, the basic rental at Riverdale Manor was an average of $33.00 per unit.

Subsequent to November 1, 1951, the Office of Rent Stabilization and Riverdale Manor, Incorporated, conferred on the subject of granting to Riverdale Manor, In-

corporated, an increase in their maximum rent, so that said maximum rent would reflect the 20% increase over the maximum rent established for said units on June 30, 1947, and as provided in the Housing and Rent Act of 1947, as amended. After a thorough discussion of the situation, it was decided that Riverdale Manor should apply for a basic maximum rent of $39.60 per unit. On March 19, 1952, Riverdale Manor refiled on all of their rental units, requesting the increase as reflected by the result of the conference. Orders were entered by the Area Rent Director granting the increase on all units except some few which the Area Rent Director failed to process. There was no appeal taken from these orders granting said increase.

Subsequent to the issuance of the orders granting the 20% increase, it came to the attention of Riverdale Manor that the Rent Advisory Board for the City of South Norfolk, Virginia, was making an investigation into the possibility of reducing the maximum rents for Riverdale Manor. No formal notice of any hearing before the Rent Advisory Board was given to Riverdale Manor, nor was it ever afforded an opportunity to be fully heard before the Rent Advisory Board.

On or about April 24, 1952, the Area Rent Director mailed to Riverdale Manor a notice of proceedings by the Rent Director stating that an investigation by the City of South Norfolk Rent Advisory Board disclosed that the basic maximum rent for the Riverdale units should be decreased from $39.60 to $30.30. Despite a protest from Riverdale, and without affording it a chance to be heard or to present its defense, the Area Rent Director proceeded, on or about May 9, 1952, to issue the reduction orders as requested by the South Norfolk Rent Advisory Board, the said reductions being effective June 1, 1952.

Riverdale Manor, in attempting to carry out the procedure established by the Director of Rent Stabilization, petitioned for a hearing before the Rent Advisory Board of the City of South Norfolk in order to persuade the Board that it was in error in making said recommendation without giving Riverdale an opportunity to be heard before the Board decided its recommendation. Riverdale, at the time of filing its petition, requested the Director of Rent Stabilization to extend the time for filing an appeal before him until the South Norfolk Rent Advisory Board had an opportunity to reconsider the case. Said extension of time was granted for a reasonable time after the decision of the South Norfolk Rent Advisory Board.

The matter was heard by the Board on May 28, 1952, at which time it indicated that no decision would be forthcoming until after June 1, 1952, the effective date of the orders. Riverdale was notified on June 14, 1952, that the Board refused to reopen the case and Riverdale accordingly filed its appeal to the Director of Rent Stabilization on June 16, 1952. On or about May 29, 1952, Riverdale, in order to prevent the deprivation of its property without due process of law, petitioned the District Court for the Eastern District of Virginia at Norfolk to enter a temporary restraining order to forestall the effective date of the reduction orders. Such restraining order was issued by the District Court prior to June 1, 1952. The preliminary injunction, from which the instant appeal was taken, was issued by Judge Wilkin (as has been indicated) on June 16, 1952.

The cases are legion holding that one claiming to be hurt by an administrative proceeding, where an administrative review is open and available, cannot, in lieu of, and without resorting to, this administrative review, appeal for relief to the courts. With this we have no quarrel. Appellee here, however, has perfected its administrative appeal and has sought an injunction to maintain the *status quo* until, and only until, his administrative appeal is decided. This presents the question whether the granting of the instant injunction falls within the general rule prohibiting the interference of courts before exhaustion of the review provided under the administrative process. In other words, can a party alleging hurt by the administrative order, perfect his administrative appeal from the

order, and while that appeal is pending and before it is determined, obtain a court order maintaining the *status quo* and enjoining the enforcement of the administrative order until a determination is had on the administrative appeal? We think this question must be answered in the negative, and the decree below must be reversed.

Perhaps the strongest case here is Aircraft & Diesel Equipment Corporation v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796. There the precise question before us was involved—whether court intervention was proper *after the initiation but before the exhaustion* of the administrative process. Said Mr. Justice Rutledge, 331 U.S. at page 767, 67 S.Ct. at page 1500:

"We do not think the differences mentioned are sufficient to distinguish the cases for purposes of applying the exhaustion rule. Certainly no such effect can be derived from the fact that in the Waterman case [Macauley v. Waterman] 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839, the plaintiff had not begun the administrative process, while here Aircraft has gone as far as it can. The doctrine, wherever applicable, does not require merely the *initiation* of prescribed administrative procedures. It is one of *exhausting* them, that is, of pursuing them to their appropriate conclusion and, correlatively, of *awaiting their final outcome before seeking judicial intervention.*" (Italics ours.)

Riverdale claims it will suffer irreparable injury if it collects rents on the lower basis while the order of the local Board remains in effect. Riverdale's reasoning here is that, if the Expediter should grant it relief on appeal, Riverdale would experience grave difficulty in collecting from its tenants the difference between the amount of the rents at the lower figure and the amount of the rents at the higher figure. Riverdale relies on this injury to justify issuance of the instant injunction.

In the Aircraft case, a comparable situation was presented. Aircraft urged it was relieved from exhausting administrative remedies upon the ground that the Govern-

ment was taking steps to prevent the plaintiff's customers from paying over to it moneys owing to it on contracts aggregating $270,000. The complaint further alleged that the War Contracts Price Adjustment Board was threatening to direct plaintiff's customers to pay these sums to the Treasury, and that unless they were restrained, plaintiff would sustain irreparable injury. In addition, Aircraft claimed, perhaps more persuasively than appellee in the instant case, that if it were required to sue its customers, "numerous actions in different jurisdictions, resulting in expense and delay, as well as loss of good will" would be incurred, 331 U.S. at pages 761–762, footnote 42, page 777, 67 S.Ct. at page 1498. Holding that plaintiff was precluded from obtaining judicial relief, Mr. Justice Rutledge said, 331 U.S. at page 780, 67 S.Ct. at page 1507:

"Whatever might be true in other circumstances, this showing as to the necessity for suing many customers is hardly sufficient to justify the substitution of equity's extraordinary relief for what in all the conditions of this case appears to be a full, adequate and completely available remedy at law."

It would thus seem that appellee is barred from obtaining any equitable relief until it exhausts its administrative remedies, particularly where appellee does not challenge the validity of either the Act or Rent Regulations, neither of which provides for stays of prospective rent orders or escrow deposits while administrative remedies are being exhausted. Nor should we sanction appellee's attempt to short-circuit the administrative remedies merely because it offers to put the overcharges received by it in escrow, or to supply a bond, pending its review of the challenged orders. This would provide a loophole for evading the established rule of exhaustion of administrative remedies.

At first blush, appellee's escrow offer is, of course, quite attractive and easy to embrace. When analyzed, however, it is plain that to adopt it would thwart the purposes of an emergency statute designed to halt inflation, to encourage the migration of

workers to critical defense areas such as Norfolk, and to maintain the morale of the many families of military personnel located in critical defense areas.

Mr. Justice Rutledge concludes his opinion in the Aircraft case, 331 U.S. at page 781, 67 S.Ct. at page 1507, as follows:

"To countenance short-circuiting of the Tax Court proceedings here would be, under all the circumstances but more especially in view of Congress' policy and command with respect to those proceedings, a long overreaching of equity's strong arm."

Justice Rutledge also stated in this case, 331 U.S. at page 773, 67 S.Ct. at page 1503:

"It is true that the presence of constitutional questions, coupled with a sufficient showing of inadequacy of prescribed administrative relief and of threatened or impending irreparable injury flowing from delay incident to following the prescribed procedure, has been held sufficient to dispense with exhausting the administrative process before instituting judicial intervention."

This rule would not justify the action of the District Court in the pending case because it is not clear that a constitutional question is involved; nor is it entirely clear that irreparable injury will occur unless an injunction is granted.

The District Judge below cited three cases in support of the injunction: A. & M. Brand Realty Corporation v. Woods, D.C., 93 F.Supp. 715; May v. Maurer, 10 Cir., 185 F.2d 475; Koepke v. Fontecchio, 9 Cir., 177 F.2d 125. The Brand case is not in point. It merely held that an order of the Housing Expediter (not as here the order of the local Board) may be enjoined in the District of Columbia by suit against the Housing Expediter. And it seems that in the Brand case, plaintiff had exhausted his administrative remedies. In May v. Maurer, plaintiff's case was dismissed and Judge Phillips expressly stated, 185 F.2d at page 478: "Neither do we think May could maintain an action for such incidental relief without first exhausting her administrative remedies." The Fontecchio case was distinguished by Judge Phillips. Apparently the Fontecchio case affords some ground for Riverdale's contentions, for there an injunction was granted, restraining the enforcement of the maximum rentals. But Circuit Judge Gardner was careful to point out, 177 F.2d at page 128:

"The Housing Expediter had already announced his interpretation. He later embodied it in a regulation, and he still insists upon it here. In such circumstances * * * so-called administrative remedies would clearly have been futile and equity does not require the doing of a useless thing."

There was no such situation in the instant case. And, as was said by Chief Justice Stone in Yakus v. United States, 321 U.S. 414, 434, 64 S.Ct. 660, 672, 88 L.Ed. 834:

"In the absence of any proceeding before the Administrator we cannot assume that he would fail in the performance of any duty imposed upon him by the Constitution and laws of the United States, or that he would deny due process to petitioners by 'loading the record against them' or denying such hearing as the Constitution prescribes."

See, also, Smith v. Duldner, 6 Cir., 175 F.2d 629, 631.

In the leading case of Myers v. Bethlehem Ship-building Corporation, 303 U.S. 41, 51–52, 58 S.Ct. 459, 464, 82 L.Ed. 638, Mr. Justice Brandeis said:

"Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage. Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact."

The conclusion that we have reached seems to have further support in the following cases: Macauley v. Waterman Steamship Corporation, 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839; Petroleum Exploration, Inc. v. Public Service Commission, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed.

1294; Dauksewicz v. United States, 1 Cir., 194 F.2d 52, 55; United States v. Sharp, 9 Cir., 188 F.2d 311; Babcock v. Koepke, 9 Cir., 175 F.2d 923; Miles Laboratories v. Federal Trade Commission, 78 U.S.App. D.C. 326, 140 F.2d 683; Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 4 Cir., 91 F.2d 730. We might note, too, that in the cases holding that access to courts is denied in lieu of administrative remedies, the courts almost invariably use the term that the plaintiff must (not initiate) *exhaust* his administrative remedies. See, for example, Woods v. Durr, 3 Cir., 176 F.2d 273; Koster v. Turchi, 3 Cir., 173 F.2d 605. See, also, Monticello Apartment Hotel Co. v. Vandover, U.S.D.C.E.D.Mo., decided June 3, 1952; Gates v. Woods, 169 F.2d 440, decided by our Court.

An identical result has recently been reached by Circuit Judge Martin, sitting by designation in Forrest Harmon & Co v. Rottgering, D.C.W.D.Ky., 106 F.Supp. 993. In that case, as in the instant one, the plaintiff as owner of a number of housing units sought a temporary injunction against the effectuation of rent reduction orders until its administrative appeal was finally determined. There, as here, all the plaintiff desired was to maintain the *status quo* until it could exhaust its administrative remedies, and the same irreparable loss in rents from transient tenants was alleged. Judge Martin dismissed the complaint on two grounds, the first being in accord with our conclusion that administrative remedies have not been sufficiently exhausted.

Our decision on the question we have hitherto discussed effectively disposes of this case and demands a reversal of the decree below. It is, therefore, not necessary for us to discuss or decide the other contentions of the appellants, such as, that the instant suit is one against the United States which cannot be sued without its consent, that the Housing Expediter is an indispensable party to the instant proceeding, and that the order of the Local Board is in every way valid.

The decree of the District Court is reversed.

Reversed.