Jeanne M. MURRAY

v.

Robert L. KUNZIG, Administrator, General Services, et al., Appellants.

No. 71–1586.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 17, 1971.

Decided Feb. 29, 1972.

Rehearing Denied April 27, 1972.

Mr. Raymond D. Battocchi, Atty., Department of Justice, with whom Mr. L. Patrick Gray, III, Asst. Atty. Gen., Thomas A. Flannery, U. S. Atty., at the time the brief was filed, and Raymond H. Fleischer, Atty., Department of Justice, were on the brief, for appellants. Messrs. Morton Hollander, Atty., Department of Justice, and John A. Terry, Asst. U. S. Atty., also entered appearances for appellants.

Mr. Thomas J. McGrew, Washington, D. C., with whom Mr. John T. Rigby, Washington, D. C., was on the brief, for appellee.

Before ROBINSON, ROBB and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

On 20 May 1971 Mrs. Jeanne M. Murray, the appellee, received written notice from one W. H. Sanders, Acting Commissioner, Public Buildings Service, General Services Administration, that

her employment with that agency was being terminated effective 29 May 1971. Mrs. Murray had been working as a program analyst for the Public Buildings Service since 5 January 1971, and at the time she received this notice of termination her probationary period of employment in that position had not yet expired.[1]

Under the applicable Federal Regulations, a probationary employee such as Mrs. Murray may be terminated either as a result of (1) conduct during the probationary period, or (2) reasons based in whole or in part on conditions arising before the employment in question.[2] When a probationary employee is terminated for conduct during his probationary period, the agency is simply required to give him written notice of the effective date of his separation and "the agency's conclusions as to the inadequacies of his performance or conduct," but when the termination is based in whole or in part on conditions arising before the employment in question, the employee must be given advance written notice detailing the reasons for the proposed termination, an opportunity to file a written answer to the notice, and an opportunity to furnish affidavits in support of such answer. Further, the agency is required to take such answer and affidavits into account in reaching its final decision on termination.

Probationary employees are given the right to appeal terminations to the Civil Service Commission when the employee alleges that the termination has not complied with the applicable federal law and regulations.[3]

The termination notice that Mrs. Murray received on 20 May 1971 was in the form required for a termination based on conduct during the probationary period, and gave as the reason that she had "shown complete unwillingness to follow office procedure and to accept direction from [her] supervisors." [4] Shortly before the effective date of termination Mrs. Murray's attorneys contacted a personnel official at GSA and suggested (on the basis of information that they had acquired through investigation) that her termination may have been based on conduct which occurred prior to her GSA employment, and the lawyers reminded the official that in that event Mrs. Murray would be entitled to additional procedural rights, which she had so far not been offered. After Mrs. Murray's counsel was informed by the GSA that she would not be afforded these additional procedures, Mrs. Murray filed a timely appeal of her discharge, alleging that the discharge was invalid because, *inter alia*, it was based in part on conduct occurring prior to her employment with the GSA, and she should have been afforded the additional rights appurtenant to such a discharge.

It is important to note that the Civil Service Commission has no power to order a stay of such a discharge. Confronted with this situation, Mrs. Murray brought this action in the District Court seeking a declaration that her discharge was invalid, and an injunction restraining her termination. With her complaint she filed a motion for a temporary restraining order (T.R.O.), which was issued on 28 May 1971, prohibiting the GSA from terminating her employment "until the determination of plaintiff's application for an injunction and other relief." [5] On 3 June 1971 Mrs. Murray filed a motion for a preliminary injunction, and on that same day Government counsel filed a motion to dismiss. On 4 June 1971 the District

---

1. For the statutory authority for such probationary periods, see 5 U.S.C. (Supp. V) 3321, Public Law 89–554, 80 Stat. 422 (1966).

2. The applicable regulations are to be found at 5 C.F.R. §§ 315.801–315.807 (1970 Edition). Section 315.804 refers to termination for conduct during the probationary period, and § 315.805 covers termination for conditions arising before appointment.

3. 5 C.F.R. § 315.806.

4. The notice is marked as Exhibit A in the record before us.

5. Appendix, pp. 34–35.

Court held a hearing on the motion for a preliminary injunction.

At that hearing the Government counsel argued that the District Court lacked jurisdiction to enjoin the termination (or any other jurisdiction in the matter) until Mrs. Murray had exhausted her remedies before the Civil Service Commission. Mrs. Murray's counsel drew a distinction between the type of interlocutory relief that she was seeking on her motion (which relief was requested only until the Civil Service Commission had acted on her appeal), and an actual adjudication on the merits of the contention that her discharge was improper.[6] The District Court determined that a crucial issue in the proceeding was the veracity of the assertion that Mr. Sanders, who apparently made the decision on termination, had based his decision only on her conduct during her probationary period.[7] Government counsel offered to produce Mr. Sanders' affidavit to that effect, but Judge Gasch concluded that he wanted to hear Mr. Sanders in person, and that the stay would be continued until Mr. Sanders appeared to testify.[8]

Thus a new stay was issued on 4 June 1971, continuing the T.R.O. of 28 May 1971, "pending the appearance before this Court of Mr. W. H. Sanders, Acting Commissioner, Public Buildings Service, . . . because, unless Defendants are restrained from terminating Plaintiff's employment, Plaintiff may suffer immediate and irreparable injury, loss and damage before the Civil Service Commission can consider Plaintiff's claim. . . ."[9]

By the terms of the two stays it was apparent that they would no longer be in effect after a "final hearing on the merits by the Civil Service Commission,"[10]

but in order to avoid mooting the issue of the legality of the stays and the District Court's insistence on hearing Mr. Sanders, the Civil Service Commission has not passed on Mrs. Murray's appeal, and will not until after the case at bar has been decided by this Court. The stay of 4 June 1971 is still in effect, the Government has declined to produce Mr. Sanders to testify, and we are informed that Mrs. Murray is still working at the Public Buildings Service.

On this appeal the Government challenges the validity of the stays by urging that (1) the District Court lacked jurisdiction to enjoin the discharge of a probationary employee whose appeal challenging the discharge was pending before the Civil Service Commission, and (2) that the District Court improperly restrained the discharge of a probationary employee until the acting head of the agency in which the employee worked presented testimony in the District Court concerning the reasons for the discharge. We find both of the Government's contentions to be without merit, and we thus affirm the order of the District Court.

### I. The District Court's Jurisdiction to Enjoin the Discharge

It is important to specify exactly what legal issue confronts us. We are here concerned with the propriety of the court's granting interim injunctive relief pending an administrative determination on the merits, when there is no statutory provision specifically authorizing such relief.[11] In the past this issue has been confused with the related, but quite distinct, issue of the necessity for the exhaustion of administrative remedies before an adjudication on the

---

6. See Transcript of Proceedings, Civil Action No. 1053–71, 4 June 1971, at 4–6, hereafter "Tr."

7. Tr. 2–3, 7–8.

8. Tr. 3, 8–11.

9. Appendix, p. 38.

10. Appendix, p. 34.

11. On this precise legal question see generally Comment, Interim Injunctive Relief Pending Administrative Determination, 49 Col.L.Rev. 1124 (1949) ; and L. Jaffe, Judicial Control of Administrative Action, pp. 666–686, 687–708 (1965).

merits may be obtained in a court.[12] This error stems from the failure to recognize that what is sought in actions such as the case at bar is not a determination on the merits that will be binding upon the administrative agency before that agency has had its chance to complete its procedures for such a determination, but is simply an interim form of relief to prevent irreparable damage to the parties or to the public interest while the final outcome of the administrative determination is uncertain. Such interim relief is not the interference with agency actions which the exhaustion of remedies doctrine seeks to prevent, but instead often serves as an aid to the administrative process, since by preserving the *status quo* it ensures that the final administrative determination will not be undermined or rendered ineffective by hasty or incorrect procedures at an earlier stage.[13]

This error, this confusion of the two distinct issues of exhaustion of remedies and granting of interim relief, has apparently been made by the Government here. Thus, the cases on which the Government principally relies for its contention that the enjoining of the discharge was improper are all cases which deal with the improperity of a court's rendering a finding on the merits before administrative remedies have been exhausted.[14] None of these four cases addresses the problem of the propriety of injunctive relief to stay a discharge which is not yet effective at the time the relief is sought from the courts. Furthermore, other cases cited by the Government recognize that in some situations interlocutory relief, such as is sought here, may be granted, although the particular facts of those cases did not call for such relief.[15]

12. Comment, *supra* note 11, at 1127–1128; Jaffe, *supra* note 11, at 669–671.

In addition to the view that this is a situation where the exhaustion of remedies doctrine does not apply, it is possible to regard the case at bar as one in which the administrative remedies available to the appellee have indeed been exhausted. What was sought here was the interim relief of a stay to prevent Mrs. Murray's discharge. The Civil Service Commission, to whom the appeal of the discharge was made, has no authority to grant such a stay. There is thus no administrative body to look to for the interim relief which was sought. As there was no administrative remedy available to her, it can be said that as far as the question of interim relief is concerned, Mrs. Murray had exhausted her administrative remedies. It was thus proper for her to seek such relief from this court.

For this reason, and for the reason just given in the text that we believe this issue of interim injunctive relief is quite distinct from the question of exhaustion of administrative remedies, we disagree with the conclusion of the dissent here that "the exhaustion of administrative remedies doctrine is fully applicable to cases in which temporary injunctive relief is sought . . . ." See Comment, *supra*, note 11; Jaffe, *supra*, note 11.

13. This is by no means the first time that we have recognized such a power to grant

interim relief. When the doctrine of exhaustion of remedies requires the pursuit of another remedy before an agency, if that agency cannot grant interim relief, the court may properly grant a preliminary injunction to preserve the status quo while the administrative remedy is being exhausted, though it may not grant a permanent injunction until after the administrative remedy is exhausted. See Brawner Building v. Shehyn, 143 U.S. App.D.C. 125, 133, 442 F.2d 847, 855 (1971); Wheelabrator Corp. v. Chafee, 147 U.S.App.D.C. 238, 455 F.2d 1306, 1316–1317 (1971); and see also M. Steinthal & Co. v. Seamans, 147 U.S.App. D.C. 221, 455 F.2d 1289, 1305 (1971).

14. See Green v. Baughman, 94 U.S.App. D.C. 291, 214 F.2d 878 (1954), Young v. Higley, 95 U.S.App.D.C. 122, 220 F.2d 487 (1955), Lodge 1858, American Federation of Government Employees v. Paine, 141 U.S.App.D.C. 152, 436 F.2d 882 (1970), and Johnson v. Nelson, 86 U.S.App.D.C. 98, 180 F.2d 386 (1950), cert. denied 339 U.S. 957, 70 S.Ct. 980, 94 L.Ed. 1368 (1950).

15. See American Federation of Government Employees, Local 1904, Local 1498 v. Resor, 442 F.2d 993 (3rd Cir., 1971); United States v. Professional Air Traffic Controllers Organization, 438 F.2d 79 (2nd Cir., 1970); Ogden v. Department of Transportation, 430 F.2d 660 (6th Cir., 1970).

Having thus spelled out the precise legal issue with which we are concerned, and the Government's confusion with respect to it, we now determine whether in this instance the District Court had jurisdiction to grant the interim relief sought.

Perhaps the best guidance is provided by the opinion of Justice Frankfurter, speaking for the Court in Scripps-Howard Radio v. F.C.C. (1942).[16] That case arose on certificate from this court, and held that even where there was no specific statutory grant of authority, this court had the power to stay the execution of an order of the Federal Communications Commission from which an appeal had been taken, pending the determination of the appeal. While the appeal in *Scripps-Howard* was to this court, and the appeal in the case at bar is to another organ of the agency, we think that the Court's reasoning still applies:

> No court can make time stand still. The circumstances surrounding a controversy may change irrevocably during the pendency of an appeal, despite anything a court can do. But within these limits it is reasonable that an appellate court should be able to prevent irreparable injury to the parties or to the public resulting from the premature enforcement of a determination which may later be found to have been wrong. It has always been held, therefore, that, as part of its traditional equipment for the administra-

tion of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.[17]

Recently in F.T.C. v. Dean Foods Co. (1966),[18] the Supreme Court again alluded to this power to grant a stay, this time at the request of an agency, pending its own final determination:

> [D]ecisions of this Court "have recognized a limited judicial power to preserve the court's jurisdiction or maintain the *status quo* by injunction pending review of an agency's action through the prescribed statutory channels. . . . Such power has been deemed merely incidental to the courts' jurisdiction to review final agency action."[19]

The power to issue such relief is necessary because of the possibility of irreparable harm, but as the Court made clear in *Scripps-Howard Radio, supra,* the exercise of the power is discretionary:

> If the administrative agency has committed errors of law for the correction of which the legislature has provided appropriate resort to the courts, such judicial review would be an idle ceremony if the situation were irreparably changed before the correction could be made. [But] . . . "[a] stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. [Citation omitted.] It is an exercise of judicial discretion. The propriety of its issue

---

16. 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229.

17. 316 U.S., at 9–10, 62 S.Ct., at 879–880. The principal authority for this holding was the All Writs Act, § 262 of the Judicial Code, then 28 U.S.C. § 377, which empowered the federal courts "to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." 316 U.S., at 10n, 62 S.Ct. at 880. This provision is now to be found at 28 U.S.C. § 1651(a), and reads "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

18. 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802.

19. 384 U.S., at 604, 86 S.Ct., at 1742. The portion in inner quotations is taken from Arrow Transp. Co. v. Southern R. Co., 372 U.S. 658, 671, n. 22, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963). "There the Court cited such authority as Scripps-Howard Radio, Inc. v. Federal Communications Comm'n, 316 U.S. 4, [62 S.Ct. 875, 86 L. Ed. 1229] (1942); West India Fruit & S.S. Co. v. Seatrain Lines, Inc., 170 F.2d 775 (2d Cir. 1948); and Board of Governors [of Federal Reserve System] v. Transamerica Corp., 184 F.2d 311 (9th Cir.), cert. denied, 340 U.S. 883, [71 S.Ct. 197, 95 L.Ed. 641] (1950)." 384 U.S., at 604, 86 S.Ct., at 1742.

is dependent upon the circumstances of the particular case." [Citations omitted.] [20]

■■ Thus, before such relief may be granted, it must be shown that there is a possibility of irreparable harm without it. Mrs. Murray has urged that if relief is denied she may suffer such irreparable harm, even if she were eventually to prevail on the merits of her appeal to the Civil Service Commission and be granted a lump-sum award, since because of an absence of present wages she may be unable to meet her ongoing financial commitments such as "payments, mortgages, tuition, etc." [21] (We might also mention the humiliation, scorn, and other emotional factors which might attend an unwarranted discharge, and which an award of money may hardly rectify.) Without passing on the merits of Mrs. Murray's contention that she will suffer irreparable harm if the sought-for-relief is not granted (a task for the District Court here), we note that there was a determination that such a loss of employment could be "irreparable harm" in Reeber v. Rossell (1950),[22] a case quite similar to that at bar. We agree with the *Reeber* court that such a loss of employment *can* amount to irreparable harm, and that injunctive relief *may* be a proper remedy pending the final administrative determination of the validity of the discharge by the Civil Service Commission. Since this relief may be proper in the form of an injunction, it follows that a T.R.O. which is issued to preserve the *status quo* pending a hearing on the injunctive relief, as we have in this case, is also proper.

■ We do not think that there is any distinction to be made here between "temporary" or "permanent" federal employees, since a temporary employee certainly may be just as irreparably damaged by a termination that is not in accord with agency regulations. The issue in each instance is the same: has the agency accorded procedural due process under its own regulations? Thus, it is within the court's discretion to grant interlocutory relief in a case of either type of employment, provided that the necessary conditions for an exercise of that discretion are present. We now move on to enumerate those conditions.

■ The landmark decision in our Circuit on the factors which influence the decision here on whether to grant extraordinary relief is Virginia Petroleum Jobbers Ass'n v. F.P.C. (1958).[23] Judges Miller, Bazelon, and Burger, in

---

20. 316 U.S., at 10–11, 62 S.Ct., at 880.

21. Brief for Appellee, at 8–9.

The assertion of the dissent that "The majority attempts to justify its decision by finding that unless interim relief is granted, Mrs. Murray may suffer irreparable harm from a temporary loss of wages" is an erroneous conception of the majority's position. We cannot, of course, make any such finding, as that is for the trial judge, who *has not yet* (and may never) decide this point in favor of Mrs. Murray. See *infra*, Part III. We agree with the position taken by the dissent that a remedy for "temporary loss of wages" has been provided by Congress in the Back Pay Act of 1966, 5 U.S.C. § 5596 (1970). In most cases this may prove to be a complete safeguard for a discharged (or soon to be discharged) federal employee, and consequently judicial intervention to grant a stay would be unwarranted for the reasons given in the dissent of Judge Robb.

Nevertheless, there are occasionally exceptional cases where the remedy of back pay or reinstatement will not be enough, and an exercise of the court's equity powers to grant interim relief may be called for. See Covington v. Schwartz, 341 F.2d 537 (9th Cir. 1965). Congress presumably could remove the jurisdiction of the District Courts to grant such equitable interim relief, in light of the remedies available, such as the Back Pay Act, but so far it has not seen fit explicitly to do so. Until the day that it does, we are unwilling to rule that the District Courts may not continue to perform their historical role and grant equitable relief in the exceptional cases which may arise in this area. See *infra*, note 34 and accompanying text.

22. 91 F.Supp. 108 (S.D.N.Y., Kaufman, J.). See also Covington v. Schwartz, 341 F.2d 537 (9th Cir. 1965).

23. 104 U.S.App.D.C. 106, 259 F.2d 921.

a *per curiam* opinion, held that four questions must be asked: (1) Has the petitioner made a strong showing that he is likely to prevail on the merits on his appeal? (2) Has the petitioner shown that without such relief he will be irreparably injured? (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? (4) Where lies the public interest? [24] This four-question formula must be applied by the trial courts in deciding whether to grant a stay, and the formula has been widely referred to.[25] The first of these four questions, "Has the petitioner made a strong showing that he is likely to prevail on the merits of his appeal?", is of particular interest to us here, since it is the question which has resulted in the second issue in this appeal, and it is to this issue which we now turn.

## II. *The District Court's Power to Continue Its Order Until Mr. Sanders Appears to Testify*

One of Mrs. Murray's chief contentions in her appeal to the Civil Service Commission is that her termination was based at least in part on events which took place prior to her employment with the GSA.[26] If Mrs. Murray is correct, she will prevail in her appeal to the Commission because admittedly the agency did not accord her the hearing and other procedural due process called for by its own regulations. Thus the accuracy of this contention is important for the District Court here in answering the first of the four questions to determine whether a stay should be granted, "Has the petitioner made a strong showing that he is likely to prevail on the merits of his appeal?"

While it is not explicit from the record that the District Court was seeking to determine the veracity of this allegation

of Mrs. Murray's as part of the four-question formula for determining the propriety of a stay, we think that this may be implied, and knowing that the District Court is thoroughly familiar with *Petroleum Jobbers*, this is what it must eventually come to. It is clear that it was this question, whether the termination was based on events which took place before Mrs. Murray's temporary employment, which led that Court to continue the stay until Mr. Sanders was produced to testify. As mentioned earlier, at the hearing on the motion for a preliminary injunction of 4 June 1971, the Government counsel offered to produce an affidavit signed by Mr. Sanders to the effect that he had based Mrs. Murray's termination *only* on her conduct during her probationary period, but the court decided that it could better judge the veracity of this assertion if Mr. Sanders were to appear in person.[27]

We think that this issue is resolved by the text of Rule 43(e) of the Federal Rules of Civil Procedure, which provides that:

When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, *but the court may direct that the matter be heard wholly or partly on oral testimony* or depositions. [Emphasis supplied.]

We read this rule as giving the trial court discretion to choose between hearing oral testimony or taking affidavits in making the factual judgments necessary to the granting or denial of the motion in question. We think that this must mean that the trial judge may decline to accept affidavits that are offered, and insist on oral testimony, for reasons which we shall elaborate below. Finally, since Government counsel was

---

24. These four tests are discussed at 104 U.S.App.D.C., at 110, and 259 F.2d, at 925.

25. Jaffe, *supra* note 11, at 689.

26. See text following note 4, *supra*.

27. Note 8, *supra*, and accompanying text.

aware of Rule 43(e), counsel knew that an offer to present testimony by affidavit might result in the Government being required to produce oral testimony instead. We do not here reach the issue of whether the trial judge could have continued his stay even if the Government had not offered Mr. Sanders' testimony by affidavit, but we do hold that when the Government, as it did here, offers to produce testimony by affidavit, because of Rule 43(e) it cannot decline to produce the affiant for oral examination.

We make this holding because of the purposes that lie behind Rule 43(e), and their applicability in this context. As we recently observed, "the decision of factual issues on a motion for a preliminary injunction simply by consideration of conflicting affidavits is widely disapproved." [28] The far better procedure when motions are more than routine is to take oral testimony as to disputed matters of fact.[29] This is because of the better opportunity that oral testimony gives the trier of fact to determine credibility. Affidavits deprive him of the opportunity to judge demeanor, and the opportunity to observe "the chastening process of cross-examination." [30] "Without these twin tools, normal in the trial of factual issues, the factual conclusion [is] certain to take on an unaccustomed quality of artificiality." [31]

## III. The Scope of Our Holding Here

As a last matter we consider, albeit briefly, the Government's contention raised vigorously in oral argument that to affirm the order of the trial court would be to interfere unduly with the hiring and firing of Government employees. To this contention we need only make three observations.

First, we see our function here as no more than breathing life into the regulations of the Government agencies themselves, which regulations formed the basis for the order sought in this case. Both this court and the trial court are doing nothing more than attempting to give force to those regulations.

Second, by far the greater interference with the "hiring and firing" of Government employees was caused by the Government's own decision to hold in abeyance Mrs. Murray's appeal to the Civil Service Commission, and thus keep Mrs. Murray in her position of temporary employment to avoid mooting the appeal to this court. The District Court's stay was to terminate upon the determination of Mrs. Murray's appeal to the Civil Service Commission, and had it not been for the conscious decision of the Government to postpone that determination, the stay would have been lifted some time ago. We are thus unpersuaded that here we are presented with an occasion where the Judiciary has interfered unduly with the day-to-day activities of the Executive Branch.

Third, and most important, we consider the scope of the opposite holding the Government seeks to have us make here. Judge Gasch has not yet ruled that the discharge of Mrs. Murray from her probationary employment should be enjoined; he may never do so. Without intimating in any manner which way this case should be decided, it is probable that only in a small percentage of cases would the complaining employee be able to establish the grounds for a temporary injunction—assuming that executive agencies conscientiously follow their own rules of due process. But here the complaining employee alleges that the agency has violated its own

28. Autera v. Robinson, 136 U.S.App.D.C. 216, 221n, 419 F.2d 1197, 1202n (1969).

29. See Autera, supra note 28; Industrial Electronics Corporation v. Cline, 330 F.2d 480 (3rd Cir., 1964) ; Securities and Exchange Commission v. Frank, 388 F.2d 486 (2nd Cir. 1968).

30. The quoted phrase is Judge Robinson's, from Autera, supra, 136 U.S.App.D.C., at 221, 419 F.2d, at 1202.

31. Ibid.

rules, has not accorded her the required hearing, and is in the process of discharging her unlawfully. She does not ask the trial court to rule on the *merits* of her discharge; the agency may have ample grounds, but it must follow procedural due process to establish them. To hold that the District Court has no jurisdiction on the basis of these allegations to grant the temporary relief requested, would be tantamount to holding that the District Court *never* would have jurisdiction.

This is really what the Government seeks here, a declaration of no jurisdiction in the District Court to grant temporary relief under any circumstance, on the ground that to do so at any time would interfere with the Executive Branch's right to "hire and fire." It is asserted that the Civil Service Commission has been given exclusive review jurisdiction.[32] But, as noted initially, there is no statutory power in the Civil Service Commission to grant a temporary stay of discharge. Prior to the Civil Service Act [33] a United States District Court would certainly have had jurisdiction and power to grant such temporary relief. The statute did not explicitly take it away, nor implicitly by conferring such jurisdiction and power on the CSC; we hold the District Court still has jurisdiction and may exercise the power under established standards in appropriate circumstances.[34]

As the District Court here felt that the hearing on the motion for the preliminary injunction could not be completed until Mr. Sanders was produced to testify, it was proper for him to continue the stay, in order to preserve the *status quo* pending the completion of the hearing.

The order of the District Court is

Affirmed.

ROBB, Circuit Judge (dissenting):

The majority concedes that Mrs. Murray did not exhaust her administrative remedies under the Civil Service Commission regulations (*See* 5 C.F.R. §§ 315.801–315.807 (1971)) before seeking injunctive relief in the district court. The majority opinion also recognizes the established doctrine that a court may not intervene with a decision on the merits before administrative remedies have been exhausted. *See, e. g.*, Young

---

32. Brief for the Government, at 11–12.

33. Act of Jan. 16, 1883, ch. 27, 22 Stat. 403 (See Title 5, U.S.C. §§ 1101–1105, 1301–1303, 1307, 1308, 2102, 2951, 3302–3306, 3318, 3321, 3361, 5706, 7152, 7153, 7321, 7322, 7352; See Title 18, §§ 1, 371, 1917; Title 40, § 42); Act of July 26, 1937, ch. 522, 50 Stat. 533 (See Title 5, § 7152); Act of June 10, 1948, ch. 434, 62 Stat. 351 (See Title 5, § 7153).

34. The Communications Act of 1934 was likewise silent as to interim relief by the FCC or the courts. In Scripps-Howard Radio, Inc. v. F.C.C., *supra* note 16, the Supreme Court held:

> The search for significance in the silence of Congress is too often the pursuit of a mirage. We must be wary against interpolating our notions of policy in the interstices of legislative provisions. Here Congress said nothing about the power of the Court of Appeals to issue stay orders under § 402(b). But denial of such power is not to be inferred merely because Congress failed specifically to repeat the general grant of auxiliary powers to the federal courts. The Commission argues that the silence of Congress, in view of the legislative history of the Act and the nature of the orders reviewable under the Act, qualifies this general authority and is as commanding as if Congress had expressly withheld from the Court of Appeals the power to stay orders appealed under § 402(b).
>
> The legislative history can furnish no support for this contention. . . .
>
> We conclude that Congress by § 402 (b) of the Communications Act of 1934 has not deprived the Court of Appeals of the power to stay—a power as old as the judicial system of the nation. We do not of course go beyond the question put to us. We merely recognize the existence of the power to grant a stay. We are not concerned here with the criteria which should govern the Court in exercising that power. Nor do we in any way imply that a stay would or would not be warranted upon the showing made by the appellant in this case.
>
> 316 U.S., at 11, 17, 62 S.Ct., at 880, 883.

v. Higley, 95 U.S.App.D.C. 122, 220 F. 2d 487 (1955); Green v. Baughman, 94 U.S.App.D.C. 291, 214 F.2d 878 (1954); Johnson v. Nelson, 86 U.S.App.D.C. 98, 180 F.2d 386, cert. denied, 339 U.S. 957, 70 S.Ct. 980, 94 L.Ed. 1368 (1950). The majority concludes, however, that this doctrine does not apply to a request for "injunctive relief to stay a discharge which is not yet effective at the time the relief is sought from the courts". Such injunctive relief, says the majority, "is simply an interim form of relief to prevent irreparable damage to the parties or to the public interest while the final outcome of the administrative determination is uncertain" and "is not the interference with agency actions which the exhaustion of remedies doctrine seeks to prevent * * *". (Opinion, p. 875) I cannot accept this theory. In my judgment the exclusion of applications for interim judicial relief from the reach of the exhaustion of remedies rule is an unwarranted and unfortunate breach of the rule that will result in improper interference by the courts in the administration of the civil service system.

The application of the exhaustion of remedies doctrine is not limited to situations in which judicial relief on the merits is sought. *See, e. g.,* Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 778–780, 67 S.Ct. 1493, 91 L. Ed. 1796 (1947); Osmond v. Riverdale Manor, Inc., 199 F.2d 75 (4th Cir. 1952); Johnson v. Postmaster General, 330 F.Supp. 1058 (D.Md.1971); K. Davis, Administrative Law Treatise pt. 3, § 20.05 at 90–91 (1958). The interests served by the exhaustion doctrine are broader than those suggested by the majority, and include such other considerations as the integrity and independence of the established administrative process and the recognition of congressional intent as reflected in statutory procedures which balance public and private interests. The decision of the majority does violence to those fundamental interests upon which the exhaustion doctrine is based.

The cases cited by the majority do not justify their broad and novel holding. The issues and facts in those cases were quite different from the issues and facts presented in the case at bar, and the language quoted by the majority must be read with this in mind. Thus, Scripps-Howard Radio, Inc. v. F. C. C., 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942), merely sustained the "conventional power" of this court to stay the enforcement of a final order of the FCC pending the determination of an appeal challenging its validity. F. T. C. v. Dean Foods Co., 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966), held only that at the instance of the Federal Trade Commission a circuit court of appeals, under the All Writs Act, 28 U.S.C. § 1651(a), might enjoin a merger on the ground that "an effective remedial order, once the merger was implemented, would otherwise be virtually impossible, thus rendering the enforcement of any final decree of divestiture futile" (384 U.S. at 605, 86 S.Ct. at 1743). In other words, the Court held that injunctive relief was necessary to prevent the impairment of the effective exercise of appellate jurisdiction. Again, in West India Fruit & Steamship Co. v. Seatrain Lines, Inc., 170 F.2d 775 (2d Cir. 1948), the Maritime Commission joined with a private party in requesting the court to enjoin rate reductions that were alleged to be unlawful. In granting the injunction the court carefully recited the extraordinary circumstances which warranted such relief. That case does not support the broad exception to the exhaustion of remedies rule expounded by the majority. *See* K. Davis, Administrative Law Treatise pt. 3, § 20.05, at 90–91 n. 46 (1958).

The majority attempts to justify its decision by finding that unless interim relief is granted, Mrs. Murray may suffer irreparable harm from a temporary loss of wages. The flaw in this argument is that Congress by the Back Pay Act of 1966, 5 U.S.C. § 5596 (1970) (*See* 5 C.F.R. § 550.801), has expressly provided that administrative review by the

Civil Service Commission shall not inflict irreparable harm upon an employee who is found to have "undergone an unjustified or unwarranted personnel action." The Act insures that Mrs. Murray's appeal to the Civil Service Commission can give her substantial and effective relief by way of reinstatement and reimbursement for pay lost, if she was improperly dismissed. There is therefore no need here for injunctive relief to avoid "rendering the enforcement of any final decree * * * futile".

The opinion of the district court in Reeber v. Rossell, 91 F.Supp. 108 (S.D. N.Y.1950), upon which the majority relies, assumes that reinstatement with back pay could not have been awarded to the plaintiffs if they were successful.[1] (See 91 F.Supp. at 113). In light of the Back Pay Act of 1966, which now makes such relief available, the reasoning of this 1950 decision is not persuasive.

The legislative and administrative scheme embodied in the Back Pay Act and the Commission's regulations leads me to the conclusion that this case does not call for equitable relief prior to the exhaustion of all administrative remedies. Congress has enacted a statutory scheme to govern the dismissal and reinstatement of federal employees and has thereby struck a balance between the government's right to hire and fire and the rights of individual employees. A court should not upset that balance by interfering before the administrative remedies provided by the statutory plan have been exhausted. Certainly a court should not substitute its judgment on the

equities or the public interest for the judgment of Congress. This is particularly true here, where the injury to Mrs. Murray is no greater than that which would ordinarily flow from dismissal. My conclusion is reinforced by the statement of Senator Langer, manager of the 1948 back pay bill[2] in the Senate:

MR. LANGER. Mr. President, the [conference report on the back pay bill] represents a full and complete agreement, and provides that an agency or department of the Government may remove an employee at any time, but that the employee shall then have a right of appeal. *When he is removed, he is of course off the pay roll.* If he wins the appeal, it is provided that he shall be paid for the time during which he was suspended. 94 Cong.Rec. 6681 (1948) (emphasis supplied).

In short, the exhaustion of administrative remedies doctrine is fully applicable to cases in which temporary injunctive relief is sought, and I perceive no occasion for making an exception to its application in this case. "The very fact that Congress has [established a prescribed procedure] must be cast into the scales as against the factors which, without that fact, would or might be of sufficient weight to turn the balance in favor of allowing utilization of equity's resources. * * * In short, the so-called general principles governing the exercise of jurisdiction in equity are not to be taken in such a case as isolated from all effect of the legislative mandate or necessarily or even readily overriding

---

1. The *Reeber* case involved employee claims under the Veterans' Preference Act which arose out of demotions and dismissals pursuant to a reduction in force in the Veterans' Administration. On these facts, Judge Kaufman's view that back pay and reinstatement would not be available to the plaintiffs was most likely correct. *See* 62 Stat. 354 (1948); 39 Comp.Gen. 639 (March 14, 1960).

2. The 1948 Act, 62 Stat. 354, was the predecessor to the Back Pay Act of 1966,

5 U.S.C. § 5596. The 1966 Act was intended only to fill certain gaps in the protection afforded by the earlier back pay provisions. *See, e. g.,* note 1 *supra.* The legislative purpose behind both the 1948 and 1966 provisions was identical. *See* S. Rep. No. 1062 (March 10, 1966), in 1966 U.S.Code Cong. & Admin.News pp. 2097–98. Senator Langer's remarks related to the conference report on the 1948 amendment, 62 Stat. 354 (1948), to section 6 of the Act of August 24, 1912, 5 U.S.C. § 652 (1946).

it." Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 775, 67 S.Ct. 1493, 1504, 91 L.Ed. 1796 (1947). To uphold the district court's action, in my view, is to short-circuit civil service procedures by over-extending the long arm of equity.

I respectfully dissent.

On Appellants' Petition for Rehearing

WILKEY, Circuit Judge:

Since the appellant Government's petition for rehearing repeats and amplifies several misconceptions advanced in its first argument, we think it desirable to add these comments to our original opinion, in the hope that those charged with the responsibility of administering the laws may have a more accurate understanding.

■ 1. The Civil Service Act [1] did not confer upon the Civil Service Commission power to grant the type interim relief sought here. This seems to be beyond challenge.

■ 2. Nor did the statute remove from the courts the power to grant interim relief. This is beyond challenge if the words of the statute, its plain meaning, and its specific provisions are considered. What the Government argues is that *by implication* the statute and the Congress *must have* intended to do this, because in other provisions the Civil Service Commission is given such complete authority.

The Government is incorrect in its allegation that the court's opinion is inconsistent with congressional intent, since here there has been no manifest congressional intent to disturb the equity powers of the courts. The Government does not seem to perceive that this case involves a very limited principle, and that our opinion does little more than restate the proposition that in some very unusual circumstances a U. S. District Court may exercise its traditional equity powers to prevent irreparable injury. The situation of a temporary employee is not different from many other situations in this respect.

What the Government refuses to face up to is that if the courts are barred from even considering interim relief in this case, it would follow that the courts are barred from considering interim relief in any conceivable type of discharge case that could be brought before the courts. We are unwilling to deny jurisdiction to the courts in all such future cases.

■ 3. Thus the Government's statement of the issue, "Whether a federal employee about to be discharged has the right to a trial *in district court* prior to the time he exhausts his remedies with the Civil Service Commission, which later will hold a hearing *on the same issues* resolved in the district court proceeding" [emphasis in Governmental Petition], is incorrect. We do not hold that the employee has the right to a trial in the District Court *on the same issues* as are before the Civil Service Commission. All that the District Court should do is to apply the traditional *Petroleum Jobbers* [2] tests to determine whether injunctive relief is appropriate. While this involves a determination, *inter alia,* whether there is any likelihood of success on the merits, *this is not a determination of the merits,* which is the province of the Civil Service Commission in the first instance, and will not be disturbed by a reviewing court if it is based on substantial evidence.

■ 4. Furthermore, while in this case it was inappropriate to conduct the proceedings merely through affidavits, this will not always be the case. Where there are no problems of credibility in the mind of the trial judge (as we had

1. Act of Jan. 16, 1883, ch. 27, 22 Stat. 403; Act of July 26, 1937, ch. 522, 50 Stat. 533; Act of June 10, 1948, ch. 434, 62 Stat. 351. For the codification of these statutes see note 33 in our original opinion in this case, at 880.

2. Virginia Petroleum Jobbers Ass'n v. FPC, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958).

here), it is not inconceivable that a great many applications for injunctive relief can be disposed of through the briefest of hearings, perhaps accompanied by affidavits. This should be particularly true as to the issue of irreparable injury, which is of course necessary for injunctive relief, and which might well be triable by affidavit.

5. The Government does not seem yet to have grasped the distinction between the issue of exhaustion of administrative remedies and the question of the propriety of granting interim relief. This court and others, including commentators such as Kenneth C. Davis and Louis Jaffe, have grasped and articulated this distinction, as made in our opinion (see notes 11–13 and accompanying text). That the Governemnt is making the same error of failing to distinguish the exhaustion cases from those dealing with the propriety of the grant of equitable interim relief is underscored by the fact that, to support its assertion that our decision "conflicts with so many others," they rely again on the same four purely exhaustion cases which we were at some pains to distinguish in our original opinion.

■■■ 6. The Government's statement that "The majority's conclusion that a wrongfully discharged employee's remedy of back pay (and reinstatement) is not adequate enough to preclude the issuance of injunctive relief is very broad and equally wrong" appears to misread our opinion. This court's opinion merely suggested that in *some* cases of employee discharge back pay and reinstatement *may* not be enough to prevent irreparable injury. This is hardly a "very broad" statement. Further, the court's suggestion in this case appears to be inherent in the holding of Schwartz v. Covington,[3] nowhere discussed in the Government's petition for rehearing.

The situation and reasoning of the Ninth Circuit are closely parallel to ours here. In *Schwartz* a stay of the peti-

tioner's pending discharge had been issued by the District Court, at the time petitioner's administrative appeal on the merits was in process, as in Mrs. Murray's case. The evidence relied on by the agency (U. S. Army) making the discharge included evidence of acts during a prior enlistment, which had been terminated by an honorable discharge. Under Army Regulations acts committed during a prior enlistment are not available as evidence to support a discharge from a subsequent term of enlistment, or so it was argued. Here Mrs. Murray argues that the GSA's decision to discharge her rests on evidence of acts committed during a prior "enlistment," *i.e.*, term of service with another agency. The Government disputes this, but under regulations of GSA itself an employee cannot be discharged *without a hearing* if evidence of service in another agency is relied upon by the discharging agency (GSA).

In *Schwartz* the District Court granted a stay pending administrative review, by the Army Board for Correction of Military Records, on the merits. The Ninth Circuit affirmed, finding irreparable damage to the employee if the stay were not granted, even though full back-pay compensation would be available after administrative review. Here the District Court granted a temporary restraining order pending a hearing, which stay has been continued in effect until a certain GSA official appears to testify. The District Court has not yet reached the stage at which it will decide whether to grant a temporary injunction pending administrative review, here by the Civil Service Commission, as was done in *Schwartz*. We affirm the District Court action staying employee discharge pending administrative review on the merits, as did the Ninth Circuit, holding merely that it is possible that Mrs. Murray may show (or may have shown) irreparable damage, if the hearing before Judge Gasch is allowed to proceed to a decision.[4]

3. 341 F.2d 537 (9th Cir. 1965).

4. Lodge 1858, American Federation of Gov. Emp. v. Paine, 141 U.S.App.D.C. 152,

436 F.2d 882 (1970) is not to the contrary. Judge Robinson's language re exhaustion, quoted and relied on by the

We cite Schwartz v. Covington simply to support the proposition that equitable interim relief may sometimes be proper in the case of an about-to-be-discharged federal employee. In *Schwartz* the Ninth Circuit held that such relief was proper, "pending exhaustion of military remedies and judicial review by a United States District Court, during which time appellee retain his present rank and status." [5]

In his dissent to this supplemental opinion Judge Robb criticizes this reliance on the grounds that there is a decision of our court, Ogden v. Zuckert,[6] which holds that consideration by such an Armed Services review board is not a part of "the administrative process which precedes finality." Whatever the correctness of the *Ogden* court majority (see the closely reasoned dissent by the then Judge Burger), the holding in that case has no application to our reliance on *Schwartz*.

The Ninth Circuit was concerned in *Schwartz solely* with the question of the *propriety of granting interim relief*. The opinion did *not* pass *either* on the merits *or* on the application or nonapplication of the doctrine of exhaustion of administrative remedies; it *assumed* that the doctrine did apply, and simply granted interim relief pending the final administrative determination. In *Ogden*, on the other hand, this court held that the exhaustion doctrine *did not apply*, because the matter had achieved sufficient administrative finality (there was no statute *requiring* further resort to the administrative process); hence, the District Court could proceed to an adjudication of the merits of the dispute, if it chose so to exercise its discretion. In other words, in *Ogden*, unlike *Schwartz*, the question *was* the application or non-application of the doctrine of the exhaustion of administrative remedies.

Murray v. Kunzig is a case like Schwartz v. Covington. We are not concerned with the application or non-application of the doctrine of exhaustion of administrative remedies, but simply with the propriety of the District Court's exercise of its traditional equity powers to grant interim relief. In the view of the Ninth Circuit, Covington had *not* exhausted his administrative remedies before he went to court; in fact, he was busy pursuing such remedies while he was in court. So is Mrs. Murray.

Furthermore, the Government's (and our dissenting colleague's) attempt to distinguish Scripps-Howard Radio, Inc. v. FCC,[7] FTC v. Dean Foods,[8] and Reeber v. Rossell [9] misses the point that our opinion cites these cases merely as examples of the propriety, under certain circumstances, of the granting of interim equitable relief. The court's opinion does not hold, and the trial judge has not yet held, that interim relief *is proper* in Mrs. Murray's case, but we do hold that the trial judge may consider granting such relief, as this is inherent in his historical equitable role.

7. The Government is fearful that every other government employee facing discharge will be able to march into the U. S. District Court, demand the same hearings, and delay a discharge for as long as the appellee Mrs. Murray has. Even if the Government is correct on the deluge of cases with which the District Court will be flooded from employees be-

Government, Appellants' Petition for Rehearing and Suggestion for Rehearing In Banc at 6, is preceded, significantly, by: Resort to the courts must *ordinarily* be postponed until administrative remedies available for rectification of the errors complained of have been exhausted. [Footnote omitted.] And the court, *as a general rule,* must stay its hand in reduction in force controversies until administrative resolution of the matters in issue in a proceeding efficacious to that end. [Footnote omitted.] 141 U.S.App.D.C., at 168, 436 F.2d, at 896 (emphasis supplied).

5. 341 F.2d, at 538.

6. 111 U.S.App.D.C. 398, 298 F.2d 312 (1961).

7. 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942).

8. 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966).

9. 91 F.Supp. 108 (S.D.N.Y., 1950).

ing discharged, this is no reason for misconstruing the language of the statute to evade the District Court's assigned (or, more accurately, not removed) responsibilities.

8. We seriously question the validity of the Government's fears of such a deluge and resulting delay in discharges. Aside from the point that Mrs. Murray has only been able to secure delay because the Government has not permitted the Civil Service Commission to rule on her case, it appears that many government employees (*e.g.*, those with other sources of income, as from an employed spouse) will be so unable to demonstrate the possibility of irreparable injury that their proceedings in the District Court will be of the most limited duration, perhaps going no further than a motion for dismissal by the Government, and a brief duel by affidavits. The ultimate decision by an employee as to whether to contest a discharge must still be made by a litigant and his counsel on the basis of chances for ultimate success, not on the basis of the availability of interim relief in exceptional cases until the Civil Service Commission reaches a decision on the merits. Assuming that the Civil Service Commission is not always reined in by the Government, the Civil Service Commission should dispose of matters such as Mrs. Murray's rather quickly, and the additional time on the job bought by a temporary restraining order or other injunctive relief will not be enough to justify the great legal expense involved, unless there is a good chance of ultimate success.

Our original opinion says nothing about the merits of Mrs. Murray's claim or any other. The lawyer who would cite this opinion before the District Court as a holding on any issue except as a defense against a motion to dismiss for lack of jurisdiction would be ill-advised. We have said nothing which indicates how Judge Gasch or any other judge should decide such a petition for interim relief on the merits. Only a petitioner who can establish under the test of *Virginia Petroleum Jobbers* that a violation

of his rights has most probably occurred will be entitled to interim relief. In Mrs. Murray's case there is some evidence in the sparse record that the General Services Administration did consider her prior troubles at her prior agency employment, and that having done so, the General Services Administration was obligated under its own rules to give her a hearing. It was this evidence in the record that gave Mrs. Murray some hope of success, and gave Judge Gasch some ground to require the attendance of the agency official, who presumably could clear up the matter one way or another.

If our opinion is properly interpreted, there should be no influx of prospectively dischargeable federal employees into the District Court seeking restraining orders. If such occurs, the District Court has a very keenly developed sense for the detection of sham and pretense, and will doubtless deal with such worthless petitions summarily.

The petition for rehearing is accordingly

Denied.

ROBB, Circuit Judge (dissenting):

I am not persuaded by the explanations and disavowals in the majority opinion on petition for rehearing. Accordingly, I adhere to my dissent, while adding a few words.

In its opinion denying rehearing the majority taxes the government for failing to discuss Schwartz v. Covington, 341 F.2d 537 (9th Cir. 1965) in the petition for rehearing. The point is not well taken. In the first place the original majority opinion did not rely on Schwartz v. Covington as a major prop for its conclusions; on the contrary, the case was accorded only fleeting mention in footnotes 21 and 22. What is more important, the majority's present reliance on the case is misplaced. The majority now says that in *"Schwartz* a stay of the petitioner's pending discharge had been issued by the District Court, at the time petitioner's administrative appeal on the merits was in process, as in Mrs. Murray's case." There was no "administra-

tive appeal on the merits * * * in process" in the *Schwartz* case. The only military remedy then available to Schwartz was review before the Army Board for Correction of Military Records pursuant to 10 U.S.C. § 1552; and this court has held that consideration by this Board is not a part of "the administrative process which precedes finality". Ogden v. Zuckert, 111 U.S.App.D.C. 398, 401, 298 F.2d 312, 315 (1961). In other words, Schwartz had exhausted his administrative remedies before he went to court.

In my judgment the doctrine announced by the majority will make the district court the housekeeper and the proctor of the federal civil service. This I think is wrong.