469 A.2d 1279

Dorothy P. LITZENBERG

v.

John H. LITZENBERG.

No. 496, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Jan. 13, 1984.

Certiorari Denied June 7, 1984.

304

Albert G. Boyce, Baltimore, for appellant.

Bayard Z. Hochberg, Baltimore, with whom was A. Freeborn Brown, Bel Air, on brief, for appellee.

Argued before GARRITY, ADKINS and BLOOM, JJ.

BLOOM, Judge.

The current battle in the war between appellant, Dorothy P. Litzenberg, and appellee, John H. Litzenberg, involves a dispute as to the enforceability of a settlement agreement entered into between the parties' attorneys.

The parties were formerly married to each other. They were divorced by decree of the Circuit Court for Cecil County in 1975; ever since then, as aptly expressed in appellee's brief, they "have been at each other's legal throats. . . ." The parties made no agreement with respect to division or distribution of their property, and the divorce decree made no disposition of jointly owned property.

In June 1978 appellee filed a bill of complaint for sale in lieu of partition of the following real estate located in Cecil County, then owned by the parties as tenants in common: 1) two parcels of improved rental real estate, one located near Elkton and the other located in the town of North East; 2) one building lot in the Elkmore subdivision; and 3) twenty-nine building lots in a subdivision known as Glen Mary Heights. Appellant filed an answer, asserting that the properties involved could be partitioned in kind without the necessity of a forced sale. In April 1981 appellee filed an amended bill of complaint alleging that some of the properties involved in the law suit were capable of being partitioned in kind without financial loss to the parties. He further alleged that he had paid taxes and incurred other costs and expenses in connection with the upkeep and maintenance of these properties and requested that he receive credit in the partition for these expenditures. Appellant answered the amended bill and filed a counter-claim seeking an accounting of rents, incomes and profits allegedly re-

ceived by appellee from the use of the properties described in the amended bill as well as for the use of 207 West Main Street, Elkton, Maryland, an office building owned by the parties, from which appellee conducted his business. Appellee answered the counter-claim and filed a second amended bill of complaint to add appellant's residence to the list of jointly owned properties to be partitioned. Appellee further alleged that appellant had received rents, incomes and profits for the use and enjoyment of her residence and requested that she be required to account to him for these rents and profits.

After extensive discovery a hearing was held in connection with the issues raised by the pleadings. At the hearing the parties agreed to a partition of the properties enumerated in the original bill of complaint. By order dated November 23, 1981, the court recited this agreement, specifying the properties which were to be received by each of the parties, and reserved decision on the issues raised by the parties with respect to accounting. The parties were directed to agree upon an accountant to act as a Special Master and Special Auditor to whom the court would refer the matter of an accounting.

In January 1982 the court appointed a Special Master and Special Auditor to take testimony and obtain records and other documents in order to assist the court in resolving the accounting issues raised by the parties. In November 1982 Leonard Lockhart entered his appearance as attorney for appellant in a then-pending action brought by appellant to obtain an increase in child support and alimony. In December 1982 the Special Master and Special Auditor filed a report stating that she found that appellee owed appellant $1,193.20. Appellee excepted to that report.

In January 1983 Leonard Lockhart entered his appearance as attorney for appellant in the partition suit and thereafter filed amended exceptions to the report of the Special Master and Special Auditor. Both parties were contending that the report erred in matters of fact and law, failed to properly

credit the respective parties for monies advanced, made improper assumptions, and also that the Special Master and Special Auditor failed to comply with Maryland Rules 595, 596 and 580.

A hearing on all unresolved issues in both equity cases was scheduled at 1:30 p.m. on February 9, 1983. As the time for that hearing drew near, the parties, as well as their attorneys, realized that litigating these matters carried substantial risks. The most pressing concern for both parties was the possibility that the former marital home, occupied by appellant, and the jointly owned business premises, used by appellee, would be sold at public auction. Consequently, both sides were interested in settling these matters. After meeting with appellant, Mr. Lockhart submitted a settlement offer to Bayard Z. Hochberg, appellee's attorney. On February 6 Mr. Hochberg made a counteroffer that contained two changes from appellant's offer.

Mr. Lockhart then met with appellant and her accountant and discussed Mr. Hochberg's proposal with them. On February 8 appellant rejected the counter-offer, and Mr. Lockhart promptly advised Mr. Hochberg that appellant would only settle on the terms of her offer. Later that day Mr. Hochberg telephoned Mr. Lockhart and agreed to settle the matter on terms that Mr. Lockhart believed to be substantially in accordance with the offer his client had authorized him to submit. He telephoned the trial judge to inform him that the case had been settled, called appellant's accountant to report the news, then telephoned appellant and told her, "You don't have to give up anything, Mrs. Litzenberg. We have settled it exactly for what we asked."

The next day the trial judge called counsel into his chambers, fully expecting them to inform him that a settlement agreement had been executed by the parties. He was unpleasantly surprised when he learned that appellant refused to execute the settlement agreement drafted by Mr. Hochberg. The judge then conducted a hearing in open court, receiving testimony from Mr. Lockhart, Mr. Hoch-

berg, appellant, and appellant's accountant. Appellant complained that the purported agreement gave away certain rights which she had not authorized Mr. Lockhart to surrender. The court ruled that Mr. Lockhart had acted within his authority and that the parties were bound by the settlement agreement. Based on that ruling, appellant responded affirmatively when the court asked her if she would execute the deed and the assignment of corporate stock that were part of the agreement. On February 23 an order was signed stating that Mr. Lockhart had the requisite authority to enter into the agreement and directing appellant to execute the deed and stock assignment. Appellant refused to comply with the order and noted this appeal.

■ Subsequently, on appellee's petition, the court appointed a trustee to execute the deed and stock assignment. The trustee having executed the documents, appellee contends that this appeal is now moot. We disagree. The right of the chancellor to appoint a trustee to convey appellant's interest in real estate rests upon his decision to enforce the settlement agreement. *See* Md.Ann.Code art. 16, § 107. The case, therefore, is not moot.

Appellant now raises the following questions:

    I.  Did the lower court deny appellant due process?

    II.  Did the lower court err in enforcing an unsigned written settlement agreement that called for the transfer of an interest in land?

    III.  Did the lower court abuse its discretion by permitting appellant's trial attorney to testify against her?

    IV.  Was the lower court clearly erroneous in finding that appellant's trial attorney was acting within the scope of his authority when he entered into a settlement agreement with appellee's attorney?

Appellant contends that the order enforcing the settlement agreement deprived her of her due process rights under the fourteenth amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. Specifically, she argues that the trial court's action

deprived her of prior notice of a claim against her and of an adequate opportunity to contest that claim. Appellant saw the agreement for the first time on February 9, the day that the two equity actions were scheduled for hearing. It was only then that she became aware that the document contained items which, in her opinion, Mr. Lockhart was not authorized to include. Therefore, appellant argues, she was not prepared at the time of the scheduled hearing to contest the scope of Mr. Lockhart's authority and to defend against appellee's attempt to have the agreement enforced.

In making her argument appellant relies, in part, upon several federal cases. She quotes from *Millner v. Norfolk & W.R. Co.*, 643 F.2d 1005, 1009 (4th Cir.1981) (citation omitted), to support her position:

[Whenever] there is a material dispute about the existence of a settlement agreement ... or the authority of an attorney to enter a settlement agreement on behalf of his client, *see, e.g., Massachusetts Casualty Ins. Co. v. Forman*, 469 F.2d 259 (5th Cir.1972), the trial court must, of course, conduct a plenary evidentiary hearing in order to resolve that dispute.

In *Massachusetts Casualty Ins. Co. v. Forman, supra,* the district court had enforced a settlement between the insured, Forman, and the insurer, Massachusetts Casualty, after conducting a very brief proceeding "consisting primarily of unsworn statements by opposing counsel...." *Id.* at 260. The insurer appealed from that order. The circuit court, in reversing the lower court's order, noted that at the hearing counsel for the insurer "denied that a firm offer had been made or that he had represented that he had authority to settle the claim without approval by his client." *Id.* at 260–61.

A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.... However, where material facts concerning the existence of an agreement to settle are in dispute, the entry of an order enforcing an

alleged settlement agreement without a plenary hearing is improper.

*Id.* at 260 (citations omitted).

Appellant also cites *Autera v. Robinson,* 419 F.2d 1197 (D.C.Cir.1969), as further support for her due process argument. In that case, Mr. and Mrs. Autera brought a negligence action against Mr. Robinson. Subsequently, Robinson submitted a "Motion for Entry of Judgment in Accordance with the Agreement of the Parties." The motion alleged that an attorney for the Auteras had accepted Robinson's offer to settle the case, that the Auteras had authorized the attorney to accept the proposal, and that Mrs. Autera had signed a release. The Auteras, represented by new counsel, filed a statement supported by affidavits in opposition to the motion.

At the "hearing" on the motion, "[t]here was no cross-examination by any party's counsel of anyone else who spoke, and no testimony in the sense of statements under oath." *Id.* at 1199. The entire proceeding consisted of brief remarks by the attorneys involved and was completed in a brisk five minutes with the district court judge granting Robinson's motion and enforcing the agreement.

The circuit court reversed, noting that, while voluntary settlement of litigation is to be commended, the procedures utilized by the district court were inadequate to decide the matters before it. The court reasoned that the level of formality needed in these types of proceedings depends upon the level of factual dispute and factual complexity contained in each individual case.

> It is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it. Quite obviously, so simple and speedy a remedy serves well the policy favoring compromise, which in turn has made a major contribution to its popularity.
>
> Yet it is apparent that the summary procedure for enforcement of unperformed settlement contracts is not a panacea for the myriad types of problems that may arise.

The summary procedure is admirably suited to situations where, for example, a binding settlement bargain is conceded or shown, and the excuse for nonperformance is comparatively unsubstantial. On the other hand, it is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve. We commend the summary practice for use in connection with problems capable of precise resolution without attendant hazard to the interests of the parties. At the same time, it is evident that beyond that point the convenience of the summary procedure must yield to the exigencies of safeguarding all legally protected rights that are involved.

*Id.* at 1200 (footnotes omitted).

The court noted that summary enforcement of settlement agreements is most appropriate "where there is no factual dispute and no legal defense to enforcement." *Id.* at n. 11.

■ We are of the opinion that a "summary" proceeding and a "plenary" proceeding are not absolute, extreme opposites but, rather, that those terms represent opposite ends of a continuum with some proceedings being more or less "summary" in nature than others. That is, we agree with what is implicit in *Autera*—that the formality of the proceeding depends upon the complexity of the dispute. In *Autera,* the proceedings utilized by the district court were very informal and quick. These procedures were inadequate to deal fully with the issues before the court. Serious questions as to the authority of the Auteras' former attorney and to the validity of Mrs. Autera's release were raised during the course of the proceeding. These questions were decided on the unsworn remarks of the attorneys and the affidavits filed with the Auteras' motion.

Likewise, in *Massachusetts Casualty Ins. Co. v. Forman, supra,* the circuit court held that the procedures used by the district court were insufficient. Again, as in *Autera,* there was no live testimony presented in the lower court. Rather, the trial judge relied upon unsworn statements of trial

counsel. It must be noted that these statements contributed to a greater level of factual dispute, as the insurer's counsel indicated that he did not believe that a binding agreement had been reached nor did he feel that he had the requisite authority to reach such an agreement.

■ In the case *sub judice,* the procedures used by the trial judge were more comprehensive than those employed in *Autera* and *Forman.*[1] Sworn testimony of the attorneys was received, and appellant also had the opportunity to testify under oath. In addition, appellant's accountant testified as to discussions between appellant and Mr. Lockhart and appellant's instructions to her attorney. There were also several exhibits entered into evidence.

Yet there is no escaping the fact that appellant was not prepared to litigate the scope of her attorney's authority. She did not see the agreement until the day of the hearing when for the first time she became aware of the alleged discrepancies between the terms she had authorized her attorney to offer and the terms of the agreement he made. Thus, a serious factual dispute surfaced as to the validity of the agreement. While the procedures utilized by the trial judge may have arguably been sufficient to comply with the evidentiary hearing requirement, they were far too close in time to the event which gave rise to their necessity, *i.e.,* appellant's refusal to sign the agreement.

---

1. We note here that in *Millner v. Norfolk & W.R. Co., supra,* the circuit court did not hold that the district court's evidentiary hearing was too summary in nature. In Millner the district court heard the testimony of Millner's former attorney who had entered into the allegedly unauthorized agreement, the testimony of the claims agent of the railroad, and the testimony of Millner. In addition, the court had before it several documents including the contingent fee arrangement entered into by Millner and the attorney which contained a statement relevant to the attorney's scope of authority. While the circuit court determined that the nature of the factual dispute made summary enforcement of the agreement inappropriate, the court declined to hold that the evidentiary hearing provided was inadequate. Rather, the court's decision was based on the fact that, as an action under Federal Employer's Liability Act, Millner was entitled to have the issue determined by a jury. Therefore, the court vacated the district court's judgment.

Appellant's failure to execute the agreement was not founded upon an unsubstantial excuse, but upon a factual dispute as to Mr. Lockhart's authority to bind her to that particular agreement. "It is well settled in Maryland, and in other jurisdictions, that an attorney by virtue of the attorney-client relationship does not have implied authority to settle his client's claim. There must exist *express* authority to the attorney to authorize him to settle the client's case." *Accrocco v. Splawn,* 264 Md. 527, 533, 287 A.2d 275 (1972) (emphasis in original); *see also, Kinkaid v. Cessna,* 49 Md.App. 18, 22–23, 430 A.2d 88 (1981). Thus, any judicial decision to enforce the agreement must necessarily include a determination that Mr. Lockhart had express authority to make it. Here, unlike the situations in *Millner, Forman,* and *Autera,* appellant did not have an adequate opportunity to formulate her response to appellee's attempt to enforce the agreement. She had no time to seek new counsel, to answer appellee's allegation, and to frame her own arguments. Prompt enforcement of settlement agreements "is a concession to the policy favoring settlements, but only to the extent that full and fair opportunities to prove one's point are substantially preserved." *Autera v. Robinson, supra,* at 1203 (footnote omitted). *See also, Travelers Indemnity Co. v. Nationwide Corp.,* 244 Md. 401, 406–10, 224 A.2d 285 (1966).

Upon our examination of the record, it is apparent to us that this dispute was not an appropriate one for summary disposition. There was no clear indication of a lack of a genuine issue of material fact. Rather, there appears to be a substantial disagreement as to the content and nature of various communications between appellant and Mr. Lockhart. This controversy can be resolved only through an adversarial evidentiary hearing where both parties have ample opportunity to frame and address the underlying issues.

We hold that the procedures utilized by the trial judge were inadequate to resolve the dispute before him. We

recognize that he was fully cognizant of the path that this litigation had traveled, and we appreciate the dilemma which faced him. Nonetheless, we are of the opinion that appellant did not have adequate notice or a reasonable opportunity to litigate the issues which arose from the purported settlement agreement. In facing situations like this one, a trial judge must make sound use of his judicial discretion in patterning a method by which he can fairly, yet efficiently, dispose of the matter. The procedures utilized must be commensurate with the degree of bona fide factual dispute contained in the proceeding. *See Cia Anon Venezolana De Navagacion v. Harris,* 374 F.2d 33 (5th Cir.1967). Due process requires no less.

We shall remand the case, without affirmance or reversal, for further proceedings. Md.Rule 1071. If appellee still desires to enforce the purported settlement agreement, he can file a proper motion or petition to that effect with appellant having an opportunity to answer and defend appellee's allegations. Otherwise, the case may proceed to trial on the cross-exceptions to the report of the Special Master and Special Auditor, partition of the residence and business properties or sales in lieu thereof, request for modification of the divorce decree as to alimony and support, together with any other unresolved issues and disputes between the parties.

We do not, of course, reach appellant's fourth question, since the scope of her former attorney's authority would be the subject of the court's inquiry if the matter of enforceability of the purported settlement agreement is resubmitted to it for determination. We deem it appropriate, however, to answer appellant's second and third questions, since those issues will recur in the event of a rehearing on the settlement agreement.

■ In contending that the settlement agreement does not comply with the Statute of Frauds and, therefore, is unenforceable, appellant correctly notes that the agreement contemplates the transfers of two interests in land. It calls for

appellant to transfer her undivided one-half interest in the business property to appellee and for appellee to transfer his undivided one-half interest in the former marital home to appellant. Therefore, the agreement is not enforceable unless it "is in writing and signed by the party to be charged or some other person lawfully authorized by him." Md.Real Prop.Code Ann. § 5–104.

■ It is well established that admissions of a party in testimony will satisfy the writing and signature requirements of the statute.

> Admissions of a party in testifying, though in form evidence, are in essence not mere evidence, but make evidence against him unnecessary.... We think the Statute of Frauds requires no more.

> Furthermore, admissions of a party in the form of testimony would constitute sufficient "memoranda" under Section 4 or Section 17, or "writings" under Section 7, of the statute. For this purpose we think recorded testimony should be regarded as equivalent to signed depositions.

*Trossbach v. Trossbach,* 185 Md. 47, 55–56, 42 A.2d 905 (1945) (citations omitted). *See also, R.E.C. Management v. Bakst Serv.,* 265 Md. 238, 252–53, 289 A.2d 285 (1972); *Friedman v. Clark,* 252 Md. 26, 32, 248 A.2d 867 (1969); and *Sealock v. Hackley,* 186 Md. 49, 52–53, 45 A.2d 744 (1946).

■ Mr. Lockhart's testimony contained several statements regarding the agreement and its provision calling for the land transfers, *e.g.,* "One, 407 Delaware Avenue is to go to Dorothy. Two, 207 West Main Street is to go to John." Such statements would be sufficient to constitute admissions for the purpose of satisfying the Statute of Frauds if, in fact, Mr. Lockhart was authorized to enter into the agreement. If he had such authority, any document that he would have signed for appellant would have satisfied the Statute of Frauds. *See Strawn v. Jones,* 264 Md. 95, 98, 285 A.2d 659 (1972), and *Whittle v. Brown,* 217 Md. 161, 167, 141 A.2d 917 (1958). It follows then, under the reasoning in *Trossbach,* that if Mr. Lockhart's signing of a document would satisfy the statute, then the admissions in his testimo-

ny would also satisfy the statute. *See R.E.C. Management v. Bakst Serv., supra,* 265 Md. at 253, 289 A.2d 285 (admissions in an agent's deposition satisfied the Statute). Thus, we hold that Mr. Lockhart's testimony may satisfy the signed writing requirement of the Statute of Frauds.

■ While having trial counsel testify in the proceeding "is looked on with disfavor except in unusual circumstances, . . . such testimony is not inadmissible. . . ." *Bris Realty v. Phoenix,* 238 Md. 84, 90, 208 A.2d 68 (1965) (citations omitted). Such testimony is particularly relevant on issues concerning the validity, formation, and enforcement of settlement agreements. *See Eastern Environ. v. Industrial Pk.,* 45 Md.App. 512, 514, 413 A.2d 1355 (1980). Furthermore, in the event of a rehearing on the settlement agreement matter, Mr. Lockhart will no longer be trial counsel as well as witness. Finally, we observe that Mr. Lockhart's testimony did not involve confidential communications from his client but, rather, information he was directed by the client to impart to opposing counsel.

CASE REMANDED, WITHOUT AFFIRMANCE OR REVERSAL, FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.